The next case on the call of the docket is Agenda No. 124107, Mary Lewis et al. v. Atlantic Richfield Co. et al. Mr. Webb, you may proceed. I think as the Court knows, at least generally from the case, that we find ourselves before you in a setting of a case that is almost 20 years old. It's been up to the Illinois Appellate Court on four separate occasions. But we are before you today on a pretty simple, straightforward record that deals simply with the grant of summary judgment by the trial judge, Judge Flynn, in April of 2017, which was a relatively straightforward ruling in which Judge Flynn, after a lot of argument, kind of exposed or concluded that a vast majority of the class he had certified, because they were Medicaid recipients, did not actually have an injury that could support a tort for the case to go forward. And therefore, based on that conclusion, he granted partial summary judgment. Now, the issue before this Court, I respectfully suggest, is pretty simple. And I phrase it simply as, in a tort case where the plaintiff is only claiming a financial injury, that's all, in that type of tort case with only a financial injury, does the plaintiff have to be able to prove an actual financial loss in order to survive summary judgment? And I respectfully suggest that the answer to that question is a resounding yes, which is why Judge Flynn granted the summary judgment. Mr. Webb, may I ask you a real basic question? Of course. When you say, you start discussing in a tort case, and we're discussing the injuries in a tort case, this case has evolved over 20 years. What is the cause of action? At this point, what is the cause of action? What is the tort? I'm going to take my best judge to tell you that answer, Your Honor, but there has been debate over 20 years. So we don't really know what the case is? No, I'm not going to say that. Judge Flynn has stated that they have pled a tort that basically is a tort that lies as a false advertising case based on the fact that these defendants manufactured white lead pigment that could be hazardous to children and that they then disguised or did not reveal the nature of that as they promoted the product. So it's a false advertising case. That is the theory. That is the theory. That's the tort today based on that today. And if I have that wrong, the plaintiff will correct me, but that's what I believe the tort is. And the injury is only a financial injury. What's important is that they don't claim. They don't claim that they ever had any physical injury. They don't claim that they ever ingested lead from paint or anything else. So there's no physical injury claimed. In fact, they disavowed there ever being a physical injury in the case. And so then the question is what is the injury that they claim? And the plaintiff's claim I think is pretty simple also. The plaintiff's claim that they took their kids in to get screened for these lead tests. And when they took them in, their kids then got screened. Their minor children got screened for the lead test, and they claim that the expense of having the lead test administered by a medical provider is an expense that they are claiming as a financial loss injury in this case. They have one major problem with that. The evidence is without dispute, no doubt about it, these plaintiffs, the two in this case that went before you on as class representatives for the class, they did not pay for the lead screening test. Medicaid paid for it. They did not pay for it. They were not billed for it. They have no obligation to pay it. In fact, under Illinois law, no one can collect that from them because they were accepted as Medicaid patients by the providers. And because of that, Illinois law on its face to protect Medicaid recipients says no one can come after you after you've been accepted. No matter what happens later, there's nobody that can come after you and claim that you have to pay this money back or anything like that. And I'll come to some of the plaintiff arguments in a minute, but that's at the heart. Judge Flynn said there's four things that are not in dispute, and I'm going to grant summary judgment. Number one, the plaintiffs did not pay for the lead screening. Number two, it was paid for by Medicaid. Number three, plaintiffs never even got billed for it. Medicaid got billed for the lead screening by the medical providers. And number four, it's beyond dispute that under Illinois law, the plaintiffs have no obligation ever to pay it. Based on those simple factual conclusions, summary judgment was granted and we're here because the Illinois appellate court reversed that summary judgment ruling. And so that's what I'm going to primarily talk about here today in my argument is that opinion. Counsel, this is not in the nature of a QTAM proceeding, is that right? That's correct. It is not. Thank you. It's not. The Illinois appellate court reversed the summary judgment ruling based on what I respectfully say is a misapplication of an Illinois statute that's called the Family Expense Act, and I'm going to have to talk about that in a little detail here today because that's the major issue I think before the court because the Illinois appellate court just misapplied that statute, and so I'm going to walk through that. So I have three different issues that we have in our briefs, but I'm going to start with the Family Expense Act because I think it's the most important one and I actually think it's the only one this court really has to address because if you agree with us about the Family Expense Act, I'm not sure you need to get to any other issues in the case, but we can talk about it. That act called the Family Expense Act is a relatively simple statute itself and it kind of codifies common law, which basically says that parents are responsible for the expenses of their minor children, including medical expenses. So therefore, these plaintiffs, because they are Medicaid recipients and they in fact didn't actually incur any medical expenses, so I've never, I actually do not really understand exactly why the appellate court found that act to apply because if you read the statute, it is true. If there was actually medical expenses incurred by these parents, then clearly under the Family Expense Act, and they had paid for it, they clearly, they are obligated and they have rights of action because of their obligations. But I use the word expense. There never was an expense that had any reason to apply this statute because there was no medical expense and the ruling was just, I suspect it was just incorrect because there was no expense. And again, I just want to, as far as the record, as far as the record on these four critical facts, I don't think the plaintiffs dispute these four critical facts. At least going back and looking at the interrogatories, depositions, what they say in the briefs, I think these four facts that I just mentioned, they're not, I don't think, in dispute. The plaintiffs didn't bill for it, they didn't pay for it, Medicaid paid for it, and they have no obligation to pay for it. And by the way, this lead screening test is a covered Medicaid expense. And so I don't think the plaintiffs even argue that they disagree with those facts. And so as far as the reversal by the Illinois appellate court, I believe the appellate court cited the language of the Family Expense Act. And the appellate court states on its face that the parents are liable for the medical expenses of their minor children. That's what the statute says. So then the appellate court just took that language and assumed that these parents are obligated for the medical expenses because there were medical expenses when, in fact, the record shows that there were no medical expenses. So the reason the statute I don't think applies is that the court simply made a mistake in interpreting the statute and did not consider that if there were never any medical expenses incurred by the plaintiffs, then there would be nothing to apply the statute to and it would have no application in this particular case. And by the way, I cannot find any Illinois case that applies that statute, any at all, with anything like this, where the Illinois appellate court ever suggested, or any court in Illinois ever suggested, that the Family Expense Act creates a legal obligation on a patient, on a parent, just because they took their kid in to get a medical test and then they didn't get charged for it and they didn't pay for it, but therefore, simply because the act uses the word expense, we should assume that every time a parent walks a kid into a doctor's office that whatever happens that day, they're obligated for it and that's just not the law, that's not what the facts are in this case, and I respectfully think that's where the court went wrong. Now, the plaintiff makes two arguments to kind of get around this, or to deal with it, and I want to talk about those. And first, in the plaintiff's brief, the plaintiffs argue the following. I'm going to try to describe it. I'm going to call it the gap in time argument. The plaintiff argues, when you walk into a doctor's office with your little child in hand, and you're a Medicaid patient, you have to wait to get accepted to be a Medicaid patient. You hand in your Medicaid card and they can decide if they're going to accept you as a Medicaid patient. The plaintiff argues that in that gap of time, whether it's 10 seconds or 10 minutes, from the time you walk into the doctor's office and you explain you're there to get a blood screening test, or other things you're trying to do, but one is a blood screening test, and you show your Medicaid card, and during that gap, for 10 seconds or 10 minutes, until you're accepted as a Medicaid patient, you would have maybe, someday, someday, theoretically, a liability. Now, what would have to happen is you'd have to be rejected as a Medicaid patient. You would then agree to have the test done without Medicaid, and the test would be done, and the doctor would mail you a bill, and I guess the day you got the bill, you have an obligation, and if you paid the bill, you'd have to be able to walk into court and say that you had a medical loss because you covered that bill. None of that happened here. Just nothing like that happened. The facts are exactly the opposite. Exactly the opposite. These children were treated under Medicaid, and that's not disputed. Medicaid accepted them as a patient. Now, under Illinois law, you can accept a Medicaid patient at different stages. You can accept it by just telling the parent, we know you, you're accepted, or look at their card, say you're accepted, or you could later actually just bill Medicaid. You go ahead and bill Medicaid, then obviously you've accepted them as a Medicaid patient. But here, no one, by the way, there is actually no record in this case as to what actually did happen. Here's the only record we have. Whether there's a 10-second gap or a 35-second gap, we know without dispute that these kids were all taken in to be screened. They were accepted as a Medicaid patient. It was billed to Medicaid. No one sent any bill to the plaintiffs at all claiming that you have to pay. No one. No one has at all because it's already been paid. And so this hypothetical that, well, what if they didn't pay, and then you got a bill, that's not, it's just not in the record. So that argument I just respectfully suggest I don't believe. And by the way, that argument in particular is weak because of the following. Going back to the Mormon opinion by this court, I think in the 60s, this court has wrestled with when do we allow economic injury to be actionable as a tort as opposed to physical injury. That's just, and the court's dealt with this for years. And there's some desire by the court, I believe, to make sure we don't open up the floodgates and have claims that would not be the type of torts that should be in the court system. So Mormon said, well, you've got two types of economic injury that you can have. One is what they call economic expectancy that, well, if something had happened, my house would have gone up in value. This court held that we're not doing that. This court held that there's more limited economic loss. We'll call it financial loss. If you can actually prove that because of a tort, you actually suffered an actual financial out-of-pocket loss. That's what you've got to prove. You've got to actually walk into court and prove that you actually had an actual out-of-pocket loss or you're going to have one with reasonable certainty very quickly. So that's why this case is a financial loss case. The plaintiffs are holding on to this one area of tort law where if you have a, because they're not claiming any physical injury, they're claiming the financial loss is the cost of these tests that they did not pay for. But they're claiming it's a loss. And they're claiming it's their, I don't know how they're obligated, but they're claiming that as the injury in this case. And they have no financial loss. And so that's why, because of the nature of this case, I think the claim is very, very weak. They make one other argument, though, and I want to address it. They argue that there's a statute in Illinois. I'm going to call it the Medicaid Recruitment Statute as a shorthand way. That statute appears in the public aid code. And it basically gives the state of Illinois the right under certain circumstances to come after tort feasors. If the tort feasor has caused an injury to someone in Illinois where the state paid Medicaid expenditures for physical injuries, and then the tort feasor's conduct is revealed as having caused that injury that the state paid for, the state under some limited circumstances can do something to recoup. But what they can do has nothing to do with going after the parent. So the parent has nothing to do with this. What Medicaid can do, based on that statute, it could sue a tort feasor directly for the medical expenses. It could. If they found that a tort feasor actually had injured a kid, and there's all kinds of defenses here I'm not going to get into. But that has not happened here. And by the way, the state of Illinois actually knows about this case because the AG has been in front of Judge Flynn because there's been a discovery dispute with the Illinois Department of Public Aid about producing documents. And I'm not blaming anyone, but there's just been a discovery issue. So the state of Illinois knows about this. They've not tried to sue anybody in this. So there's no direct lawsuits pending out there. But if there were, it would not affect the plaintiffs here because they have no liability. Another thing the state can do under that statute, if a parent actually filed a lawsuit against a tort feasor, which has not happened. But if a parent did sue a tort feasor and said that tort feasor caused my kid's injury, and then that tort feasor that the parent recovers gets a judgment against the tort feasor, then the state can file a lien. It can come in on the back end and file a lien against that judgment by the parent. And if the state paid for that, they could get, as Judge Flynn talked about this extensively in his summary judgment ruling, then the state could get a lien and they could only recover, like in this case, they could recover the amount of the screening test. But they could never go after the parent. And so the parent would never have a financial loss. The parent, under no circumstances, the parent might lose part of a judgment, but the parent would never have a financial loss. Meaning that the parent ever, the issue in this case is, did the parents have a financial loss because of those medical tests? And the answer is no. So Judge Flynn anticipated this argument and said, that argument just doesn't apply because it doesn't create a financial loss for these parents. Also, I'll mention in passing, that statute, that recruitment statute I'm talking about, only applies to physical injuries. It wouldn't even apply to this case. I don't think they could even go try to get a lien in this case, because if you read that statute, it's only for physical injuries. And this is a financial loss injury, so that recruitment statute, I don't believe even responds. I'm going to make sure I watch my light. I apologize. I'm going to watch it. The collateral source rule, I want to talk about that. I can't talk about it. Thank you for your time. Good morning. May it please the Court. I'm Michael Morano. I represent two plaintiffs in this case. To answer the question, what is the tort in this case? Well, the Illinois Appellate Court in the first of four decisions in this case recognized that what occurred here was that the defendants who manufactured the type of pigment used in lead paint promoted the use of lead paint with their pigments in it to increase sales, without disclosing the risk that those pigments pose to small children. They promoted the use in homes, they promoted the use of lead paint in schools, and they promoted it in all kinds of areas where children frequent it. So is Mr. Webb correct that the cause of action here is false advertising? No, it's not advertising in the sense. They had a product that was harmful to children, and they promoted the use of that product without disclosing the risks. And not only that, but like in the tobacco situation, they actively engaged in a disinformation campaign where when medical evidence came out that this lead pigment is dangerous to children and shouldn't be used where they frequent, they promoted, they debunked those things, they paid for studies and other things. My concern is, at least if we're talking about the collateral source rule, we're going to talk about injury. Yes. And so an injury that arises out of the tort. Right. And that's why I kind of think we have to know what is the nature of this tort. It's not consumer fraud, right? No, no. So let me explain. So they promoted the use of the paint in these areas that children frequent. As a result, these paints are prevalent in many communities in our state, so prevalent that the legislature decided that we need to do something about this public health threat. So the issue is they promoted the use of this product. Their promotional efforts were very successful. The products, without disclosing the risks, their products are now prevalent in our communities, certain communities, and the legislature said, well, because of the prevalence of these risky products in the communities, we now are going to require, and it's medically necessary, for all the children in the state between ages six months and six years to undergo lead poisoning assessment. Okay. So one more question. I'm still kind of struggling. What is this tort? What is this cause of action? They promoted this product without revealing the risk. Failure to disclose. Right. How does the statute you just mentioned fit in? Is this a statute-based claim? No. So they caused the need for the testing. In other words, the first thing the legislature said was we need to assess all our children for this. But in 1995, it became more specific, and they said that in the communities where there's a high prevalence of older homes and older structures that children frequent, those children have to have a blood lead test, where they take a blood sample from the child, they send it to a lab to see what the lead content is in the blood. And so the injury of having to pay for the test arises because of the statute or because of the failure to disclose the risk? The failure to disclose the risk caused the prevalence in the communities. I'm asking about the injury. Okay. The injury in this case to the parents. To understand our claim, this is a claim by a parent for medical expenses that they incurred. Those medical expenses that they incurred are the cost of this screening that the legislature mandated because of the prevalence of lead paint in our communities. So the injury was arising out of the promotion of the product without revealing the risk. Right. Okay. Then because they were successful in promoting their product without revealing the risks, they became prevalent in the communities. The legislature instructed the Department of Public Health to identify various areas in the state where this kind of risk is prevalent. They did that by zip code. And it's communities, and they did that by identifying communities that have older housings. Mr. Morano, that's an interesting backdrop. But there's no doubt, is there, that this is an economic loss case? Well, there's no doubt that our claim is for the medical expenses that were incurred. You conceded in the circuit court that your claim was for economic loss, didn't you? For the cost. It's clearly a money damage claim. So cutting through all the background and what brought, you know, testing and that, you know, injury. The injury is not related to what happened to any children. The injury that you're claiming is economic loss. So my question to you is, was there any economic loss shown? Yes, Your Honor. And let me explain. So we agree with counsel, and they made this point, that there's a difference between injury and damages. As the restatement second says, injury is an invasion of a right. Damages is the amount of money you need to pay to that person whose right was invaded to compensate them. So the first thing you have to determine is, was there an injury in this case? So I'm a parent. I'm liable for the cost of my children's medical care as a matter of statute. But I'm not liable for the cost of medical care that they have to undergo because some torture caused that. In other words, let's say it was a car accident. I'm liable before the accident for my children's medical care, but if there's a car accident, I'm still liable. But if that medical care was caused by a tortfeasor, I can go after the tortfeasor. Were medical providers ever creditors of the public aid recipients? Medical providers, are they creditors? Yeah, I believe so, Your Honor. If they accept the patient. So medical providers are creditors or could be creditors of the public aid recipients. Oh, of the recipients. I'm sorry. Right. Once they accept the public aid recipient's benefits, then no, I agree with counsel and the arguments below. But here's the point. What is the injury here? The injury was I didn't have a liability. My clients did not have a liability for the blood lead screening of their children until the defendants caused it. In other words. Wait, wait, wait. I'm still struggling. Causation, injury, we're talking about big tort ideas, right? Sure. So there's a statute that required the testing, and the testing had a cost to it, right? And you're saying that the defendant's conduct caused the statute that caused the requirement? There's no doubt that the statute was passed because of the prevalence of lead paint in our communities. That's the reason the statute was passed. There's no doubt about that. So, yes, the defendant's conduct caused the need for lead testing. So where does the economic loss come in? My clients have an obligation, a liability, for the cost of their children's lead screening. How? Because under the Family Expense Act, and under two decisions by this court, Growl, and Growl v. Adrian, and Clark v. Children's Memorial Hospital. If you read those two cases, what they say is those were cases, Growl was a case where a father was trying to recover medical expenses and funeral expenses for the wrongful death of his son. He had a separate cause of action for that. He brought a separate cause of action for that. And this court said in Growl that his right to recover for that depends on his liability for those expenses. In other words, if he was liable to pay those expenses, he could sue the underlying court. The person that caused the son's wrongful death. He could sue that person. But this isn't a wrongful death or personal injury. I understand. It's economics. It's economics. So was that case, Your Honor. Think about it. He was just suing for money. He's suing for the cost of the medical expenses. That's different. You're suing for money in personal injury cases, too. We're talking about economic loss. We're talking about a parent's claim. Specifically to answer that question, in Growl v. Adrian, the court recognized there's two claims here. There's a claim for the wrongful death. That's one claim. But there's also a separate claim for a parent to recover the cost that the parent incurred for medical expenses and funeral costs in that case that the parent has because the parent is liable. Okay? That's what this court said in that case. Let's stop there with the parent's liability and dovetailing off of Justice Garmon's question. There's two basic type of economic loss cases, right? Mormon, put that aside, right? And the second category are ones that are not precluded as a matter of law, which I would think this one would fit into, right? And in that category of cases, a plaintiff must prove that an actual loss has occurred or is reasonably certain to occur. Has an actual loss occurred here? Your Honor, I think we're confusing the economic. The Mormon type cases deal with it entirely. I threw that out. I said there's two basic types, that one and the one that your case arguably comes up. I think under tort law, if the defendant's breach of a duty caused you to incur an expense, as in Growl, caused that father to incur an expense, that father can recover that expense from the tortfeasor, as long as the father was liable for the expense. But it seems in this case, an economic loss case, the injury is the economic loss, right? In this case, the injury to our clients was they incurred a liability that they didn't have and wouldn't have had,  Well, humor me. Has an actual loss occurred here? As far as dollars, did they pay the dollars? No, your Honor. Okay. Is there one that is reasonably certain to occur? Your Honor, humor me. Is there one that's reasonably certain to occur? Is there a possibility that someday my clients are going to have to pay out of pocket? Yes. Only unless we recover here, then they have to reimburse the state. That's the only possibility. But that's not our plan. Okay. What we're saying is that a parent has a separate cause of action for medical expenses of their children, if they were liable for those expenses. In Clark v. Children's Memorial, the issue was are parents liable for expenses after a disabled child reaches maturity? And this court said no. They said under the Family Expense Act, under the Public Health Code, parents are liable for the expenses of their children only until they reach the age of maturity. After that, if they pay for the children, and we understand why you would, it's gratuitous, and you cannot sue a tort visa at that point. Would you be here if the parents had gone to a pre-medical clinic? We believe under this court's decision in Wills v. Foster, we will. Because what we're saying is here, this case involves a tort. The underlying reason my client's children had to be tested was because of the defendant's conduct. So if that tort existed, if that tortious conduct caused my clients to have to go take their children for medical treatment, they incurred a liability that they wouldn't otherwise have. That liability is their injury. But they wouldn't have liability to a pre-medical clinic, would they? Well, that's where Wills v. Foster comes in. So now we have a tort, and we have the injury to our client is they have a liability that they wouldn't otherwise have. And that liability only gets discharged when somebody pays. That's the damage aspect of this case. When somebody pays for that liability, satisfies the liability, that's our damage, how much was paid. So if we have an injury, which we say we do because we have a liability that didn't otherwise exist, but for the defendant's tortious conduct, then the question becomes, okay, damages. And we say that damages are what? The amount necessary to satisfy that liability. In this case, the cost of the medical care. Wills makes clear that if there's a tort, and we're talking about tortious conduct, the whole purpose of the collateral source rule is to not let the tortfeasor escape liability for their tortious conduct, make them pay for what they caused. So in Wills, this court overruled Peterson v. Lund-Bockrock, where the court said it's completely free. You can't recover in tort for that because there was never a liability anyway. It seems like you're using the collateral source rule to tell us whether there was a loss or an injury in the first instance. No, again, Your Honor, our position is our injury is the liability that was created. When our children reached the age of six months, and until they reached the age of six, they had to undergo periodic testing, medical testing, to determine if they were like boys. That liability we did not have, and we would not have had, but for the defendant's conduct. That's our position. That liability is our injury. That's the injury. The damages are the amount necessary to satisfy that injury. And damages in a tort case are subject to the collateral source rule. I don't think collateral source rule, the defendants seem to argue that it only applies in a personal injury case. I disagree. It applies in tort cases where the purpose of the rule is to not let the tort user escape liability. And so it should be applied in this case. We are a classic collateral source rule case. We have parents that incurred a liability they wouldn't otherwise have for the medical expenses of their children. They either had insurance or they had Medicaid benefits, but some third party paid for that cost. Do we have a case where tort victims were physically injured by tort users? I'm sorry? Do we have a case where tort victims were physically injured by tort users? No. Well, in Peterson and Arthur and Wills and the cases that you cited, weren't those classic tort victims that were physically injured by tort users? Those cases were, Your Honor, but in the cases where the parents are suing for the recovery of the medical expenses, it has nothing to do with the underlying injury. The parents' right to recover medical expenses has to do with their liability for the medical expenses. Whether those expenses were caused by a personal injury, whether they were caused, as in this case, by a need for medical screening, it's irrelevant. Well, you mentioned yourself that the collateral source rule is a rule of damages, right? Yes, I believe it is. And it's not a rule that says that because someone paid for someone else's medical care, then that means the recipient of the medical care gets to bring a tort action, is it? No, no. No, our tort action doesn't have anything to do with the damages aspect of this. Our tort action has to do with the liability our clients incurred for the cost of their children's testing, whether they paid those costs or not, whether those costs were caused by a personal injury, by a need for medical examination because they were exposed to some product, or whatever the cost was. It really doesn't matter in the case of a parent seeking to recover medical expenses. If we're liable, if the parents are liable, and this court has said that. This is what the holding in Grahl and in Clark versus Children's Memorial is. If the parents are liable, then they can recover if the tortfeasor caused that damage to them. So it's a question of liability in the first instance. Then you go to the question of damages, again, which, Your Honor, we say damages are simply the amount necessary to discharge that liability that we all of a sudden had because of the defendant's conduct, and that those damages are subject to the collateral source rule because they're the tortfeasor and they shouldn't escape liability simply because Medicaid or insurance or somebody else paid to discharge that liability. And that, Your Honor, is why we think we have injury, we have damages, and we believe because this is a different kind of case. This isn't a personal injury case. It's a claim by a parent to recover medical expenses that they incurred, the liability they incurred for those expenses. That's what this case is about, and we believe the appellate court was correct, saying we can recover those, and we ask that the decision of the appellate court be affirmed. Thank you. Thank you. Just a couple points. The question is about what the tort is, by the way. I said that Judge Flynn said it was a false advertising claim. He said that in a shorthand way because they have some type of tort where they contend that we promoted the product and concealed the hazardous traits, and Judge Flynn called it a false advertising claim. Just so you know, I'm not going to go back to this 20-year period. We have challenged whether they didn't plant a tort that is recognizable under Illinois law. We've raised different issues with Judge Flynn about this. If this case ever were remanded or anyway, that issue is not resolved, but I'm not going to debate it. The fact is that is the tort, and I'm accepting it as the tort here, and the issue is. We kind of have to understand that to understand the collateral source rule argument. What are we talking about here? Yes, I completely agree with that. So I'm accepting that as the tort, so I'm going to come to the collateral source rule. Let me stick with whether there's an injury or not. Justice Thomas, you asked the questions, and you got the answers that I think resolve this case and should cause Judge Flynn to be affirmed. This is a financial loss case. It is. They don't deny that. It is a financial loss case. Illinois law says two things. If you're going to go with a financial loss as your form of damages, which you've got to be careful about, that's why the Illinois courts are very careful about it, you need an actual out-of-pocket loss here, which counsel just admitted we do not have, or you need at least reasonable certainty you're going to have one. And without that, you cannot proceed on an injury theory of financial loss. And on the second point, counsel said we don't have that either. So I believe those answers that were given by counsel during your questioning, Your Honor, I think resolves the case and should show that this case, Judge Flynn's decision, should be affirmed. Counsel said that the injury in this case is that they incurred the expenses for the blood testing. I don't know how he's using the word incur because there was not the evidence just overwhelmed. They did not incur the expenses. And then counsel said, well, if we went to a free clinic and got the services for free, we would have still had an injury. That's what counsel just said. So I don't understand how counsel, I actually don't understand that argument. I don't understand the argument that they have incurred expenses that they have never had an obligation to pay, did not pay, the law does not require them to pay it, and they're never going to have to pay it, and still they have a financial loss. I believe, Judge Flynn, to be affirmed. Now, on the collateral source rule, which counsel went into, counsel is, here. The law is extremely clear in Illinois that the collateral source rule only applies as a method to calculate damages, and it is not a method to create an injury. And so here, they are misusing the collateral source rule, which counsel didn't really get into, but in their brief, what they're arguing is that they are arguing that the collateral source rule should actually be used as a means to calculate an injury. There is no case in the United States that has ever held that, none at all that I can find, ever. Illinois certainly has not held it. Every time Illinois, there's three different Supreme Court opinions that discuss, that I know of, that discuss this collateral source rule in some detail, and explain the reason for the rule, and in doing so, this Court has always said it is in the context of damages. You do not get to damages unless you have an injury. So here, they clearly have failed to plead or to prove, that's why they lost some of the judgment, that they've actually had a financial loss, so they have no injury. So there's nothing for the collateral source rule to apply to, because we're not going to get to damages based on this record, because you don't get to damages until you have actually suffered an injury that supports the tort. And that's what Judge Flynn's ruling was. Now, an interesting question, which I don't believe, by the way, I don't think this Court needs to get to the collateral source rule at all, in your opinion. I don't think you do, because the collateral source rule only applies to damages, and not to injury. And the issue that we're here about, if you agree, under the Family Expense Act, there's not some defense in that they have not suffered any injury, you don't even need to talk about the collateral source rule at all. Now, the one issue I would respectfully ask if you could address is our standing argument, not because it has to be decided, but Judge Flynn said our standing issue was interesting, but then didn't rule on it, then the appellate court didn't rule on it, and that standing issue is important, we think, because it's the same reason, under Illinois law for a tort, you do not have standing unless you have an injury. You don't have standing under Illinois law, and therefore, that's just the second reason why Judge Flynn should be affirmed, not only because of his ruling that the Family Expense Act clearly does not bar ruling, but standing is a completely separate basis upon which Judge Flynn's decision could be affirmed. Thank you. Thank you. Case number 124107, Mary Lewis et al. v. Atlantic Richfield et al. will be taken under advisement as agenda number seven. Thank you, Mr. Webb, and also thank you, Mr. Marino, for your excellent arguments this morning.